Strehlow vs. Pettit and another.

STREHLOW, by guardian, Respondent, vs. PETTIT and another, Appellants.

*March 16 — April 30, 1897.*

*Malicious prosecution: Evidence: Arrest: Submission to jurisdiction: Termination of prosecution: Failure to charge an offense: Prosecution instituted to collect a debt: Want of probable cause.*

1. In an action for a malicious prosecution claimed to have been instituted for the purpose of collecting a debt, a letter written to the plaintiff a few days before the issuance of a criminal warrant, by the cashier of a bank in behalf and by authority of defendants, requesting her to pay the account in question at once "and save the trouble of taking other steps to collect it," was admissible in evidence.

2. In such action the testimony of plaintiff's brother-in-law that an officer having a warrant for her arrest had requested him to inform her of that fact and that she must appear before a justice of the peace at a certain time, and that he had so informed her, was admissible, in connection with other evidence (showing, among other things, that the warrant had been issued, and that she had so appeared), as tending to prove an arrest; and such evidence is *held* sufficient to sustain a finding that the prosecution against the plaintiff was actually commenced and that in pursuance thereof she submitted herself to the jurisdiction of the justice.

3. Evidence in such case showing, among other things, that when plaintiff appeared before the justice the case was postponed to a certain time; that at that time the plaintiff again appeared, but

no one appeared against her, and the justice said there was noth-
ing on his docket; that the warrant was never returned; and that
nothing further was ever done in the matter — is *held* sufficient to
sustain a finding that the prosecution was terminated before the
action therefor was commenced.

4. It is no defense to an action for malicious prosecution that the com-
plaint made by the prosecutor failed to state any offense and that
the warrant issued thereon was void.

5. The mere fact that a criminal prosecution was instituted for the
purpose of collecting a debt will not justify a finding that there
was a want of probable cause. *Lueck v. Heisler*, 87 Wis. 644, lim-
ited and explained.

APPEAL from a judgment of the circuit court for Jefferson
county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

On April 5, 1894, the defendant *Pettit*, being duly sworn
and examined on oath before H. A. Porter, a justice of the
peace, made complaint to the effect that the plaintiff, *Laura
Strehlow*, did, at Ft. Atkinson, Jefferson county, March 26,
1894, unlawfully and feloniously embezzle and convert to
her own use seven and one quarter yards of dress lace of the
value of $2.26, the goods and property of the firm of Pettit
& Hoffman, of Ft. Atkinson, contrary to the form of the
statute in such case made and provided, and against the
peace and dignity of the state of Wisconsin; and prayed that
the said *Laura Strehlow* be arrested and dealt with accord-
ing to law.   Such written complaint was subscribed by said
*Pettit*, who was sworn and examined before said justice.
Thereupon said justice issued his warrant to the sheriff or
any constable of said county, reciting the substance of said
complaint, and commanding him forthwith to apprehend the
said *Laura Strehlow*, and bring her before him to be dealt
with according to law.

There is evidence tending to prove that the plaintiff was
at the time in question about seventeen years of age; that
her parents had both been dead for several years; that she
was at the time living with her sister and brother-in-law,

John May; that the criminal warrant so issued was thereupon delivered to the city marshal, Flint, by such justice; that Flint thereupon went with the warrant to the home of *Laura Strehlow* for the purpose of executing it, but, not finding her, he went to the factory where her brother-in-law was employed, and informed him, in substance, that he had a warrant for *Laura*, and asked him to tell her about it, and that she should go to Porter's office at 1 o'clock that day; that the brother-in-law, May, told *Laura* at noon that Flint had a warrant for her, and that she was arrested, and that she was to appear before Justice Porter at 1 o'clock; that she went to Porter's office at 1 o'clock; that the plaintiff, Flint, May, *Pettit*, and the justice, Porter, were all that were at Porter's office at that time; that Porter had a paper in his hand (the bill of lace; at least it was the amount of $2.26); that he asked the plaintiff if she was willing to settle; that she told him she would not settle, that she would not pay any bill that she had not got; that Porter said he would like to have it settled,— to make some settlement; that *Pettit* said he was willing to settle; if she would pay him $7 he would call it settled; that that would pay for the costs; that she told him she would not settle; that May asked for time to write to her guardian; that Porter said he would postpone the case for about ten days, and fixed the date for April 19th; that he said they should appear there at 1 o'clock on that day; that on that day she appeared there, with her guardian and attorney; that no one else was there but the justice; that her attorney asked the justice if there was anything on the docket, and he said there was not; that he asked for the warrant and complaint; that her attorney copied the complaint; that there was nothing done with her that day under the warrant.

The justice testified to the effect that the defendant *Pettit* came to him with the complaint against *Laura;* that he signed and swore to it; that he gave no directions about it;

that he, as such justice, issued the warrant, and gave it to the city marshal, Flint; that he never returned the warrant, and that nothing further was done in his court about it.

On January 7, 1895, the plaintiff, by her guardian, commenced this action for malicious prosecution. The complaint alleged, in effect, the facts stated. The defendants' answer admits the making of the complaint, but alleges that it was made in good faith and without malice, that there was good and probable cause for making the same, and that it was so made on the advice of counsel; that the defendants gave no instructions or directions as to what proceedings should be had thereon; that no arrest of the plaintiff was ever made, or proceedings had in the matter, except that a warrant was issued and delivered by the justice to the marshal. And the answer further contained a general denial of everything not therein admitted.

At the close of the trial the jury returned a verdict in favor of the plaintiff, and assessed her damages at $450. From the judgment entered thereon in favor of the plaintiff, the defendants appeal.

*L. B. Caswell* and *W. H. Rogers*, for the appellants.

*Harlow Pease*, for the respondent.

CASSODAY, C. J.  We perceive no error in admitting in evidence the letter written three or four days before the issuance of the warrant to the plaintiff by the cashier of the bank, in behalf of the defendants, requesting her to call at the bank, or the store of the defendants, and pay an account of $2.26 at once, "and save the trouble of taking other steps to collect it." There is sufficient evidence tending to prove that the letter was written by the authority of the defendants. The admission of evidence as to the age of the plaintiff, and that her parents were both dead, appears to have been without objection. There was no error in admitting the testimony of the plaintiff's brother-in-law, to

Strehlow vs. Pettit and another.

the effect that he told her that Flint had a warrant for her, and that she must appear before the justice, as mentioned in the foregoing statement. It was a circumstance in connection with the other evidence tending to prove that she was arrested. In overruling the objection the court said, in effect, that if the officer told May "to tell *Laura* she must appear at the office, and he did tell her, and she appeared at the office, it is submitting to the jurisdiction of the court." We find no error in this ruling. Counsel for the defendants concede that the proofs tend to show that April 5 or 6, 1894, the plaintiff employed the attorney mentioned, "and with him called at the justice's office, as requested by Flint, and that the plaintiff, by her counsel, thereupon requested that nothing further be done for ten days," in order that matters might be arranged with the parties. The substance of the complaint and warrant in the criminal proceeding is given in the foregoing statement. They may be insufficient to charge the offense of embezzlement prescribed by the statute. S. & B. Ann. Stats. secs. 4418, 4667; *White v. State*, 20 Wis. 233. Whether they were void on their face, and charge no crime of embezzlement, as held by the trial court, or were sufficient to give the justice jurisdiction, and hence subject to amendment before the justice, it is not necessary to determine in this action. This court has expressly held that, "it is no defense to an action for malicious prosecution that the complaint made by the prosecutor failed to state any offense, and that the warrant issued thereon was void." *Lueck v. Heisler*, 87 Wis. 644; *Beuthner v. Ellinger*, 90 Wis. 439. This is in harmony with the ruling of the English courts. *Wicks v. Fentham*, 4 Term, 247; *Pippet v. Hearn*, 5 Barn. & Ald. 634.

We think the evidence is sufficient to sustain a finding to the effect that the prosecution against the plaintiff was actually commenced, and that in the pursuance thereof she submitted herself to the jurisdiction of the justice. The evi-

dence is also sufficient to sustain the finding to the effect
that such prosecution had terminated before the commence-
ment of this action, within the decisions of this court. *Wood-
worth v. Mills,* 61 Wis. 44; *King v. Johnston,* 81 Wis. 578;
*Lawrence v. Cleary,* 88 Wis. 473. These principles of law,
and the sufficiency of the evidence mentioned, dispose of
several of the errors assigned.

There are seventeen assignments of error for refusing to
charge the jury. Several of them are overruled upon the
principles already stated. Several of them relate to a single
isolated feature of the case, having its significance in con-
nection with other evidence and circumstances in the case,
and hence were properly refused. Such isolated facts or
items of evidence could not properly be thus eliminated from
the case, as a matter of law, by the trial court. The court
properly charged the° jury to the effect that the plaintiff
must prove, in order to maintain this action, that the prose-
cution was instituted by the defendants maliciously and with-
out probable cause; that both of these facts must concur;
that the want of probable cause is a material averment and,
though negative in its character, must be proved by some
affirmative evidence, unless the defendants dispense with the
proof by pleading the truth of the facts involved in the ac-
tion; that it is independent of malicious motive and cannot
be inferred as a necessary consequence from any degree of
malice that may be shown (Newell, Mal. Pros. 246, § 12; 14
Am. & Eng. Ency. of Law, 17); and that both questions
were questions of fact to be determined by the jury from
the evidence given on the trial. In another connection the
court, after charging the jury to the effect that, if a prose-
cutor fully and truly states the facts of which he complains
to some one learned in the law and admitted to practice in
the courts of record of the state, and is advised by him that
such facts constitute a criminal offense, for which he then
prosecutes, such counsel drawing the complaint for the crime

accordingly, the prosecutor and attorney both acting in good faith,— this state of facts makes out a case of probable cause and a complete defense to the action, added these words: "That is, where neither the attorney in such case nor the party sets on foot the prosecution to collect a debt. If the prosecution in such case is instituted, notwithstanding the advice of counsel, for the purpose of collecting a debt, that would be, as I have once before stated to you, a malicious prosecution." And in another portion of the charge the jury were told that: "But here again I will state that, if the main object in setting on foot a criminal prosecution is to collect a debt against the party thus prosecuted, the advice of counsel learned in the law will not constitute any defense to an action for malicious prosecution. The use of criminal proceedings to collect a debt against the party prosecuted is wholly unjustifiable, and its use for such purpose is malicious prosecution."

The learned trial judge may, as suggested by counsel on the argument, have been misled into so charging the jury by some things inadvertently said in *Lueck v. Heisler*, 87 Wis. 644. That case was correctly decided. As there, in effect, held, a criminal prosecution for the purpose of collecting a debt, or to secure some other private or ulterior benefit, is evidence of malice, and may, in certain cases, be conclusive. *Spain v. Howe*, 25 Wis. 625; *Magmer v. Renk*, 65 Wis. 364. But such prosecution for such purpose, though malicious, does not of itself constitute malicious prosecution. To be malicious prosecution, it must be without probable cause. Malice may be inferred from a want of probable cause. Newell, Mal. Pros. 240, 247, §§ 10, 13, 14. As to what, in a legal sense, constitutes malice, is a question of law for the court; "but the question of the existence of the circumstances which go to make up the essential elements of malice in a particular case is purely a question of fact, and is for the jury to determine." Id. § 15. The same learned author says: "Malice

may be inferred by the jury from a want of probable cause, but the want of probable cause cannot be inferred from any degree of express malice." Id. 265, § 3. Another authority declares that "while juries may find malice from the facts that establish want of probable cause, the most express malice is not evidence of want of probable cause." 14 Am. & Eng. Ency. of Law, 64. In the same book it is stated: "Probable cause is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted. Such facts and circumstances must not only exist, but the defendant must have believed in the guilt of the plaintiff." Id. 24, 26. And again: "It is stated broadly in many cases that a plaintiff who, after consulting counsel in good standing, and fully disclosing the facts of his case within his knowledge, acts upon the advice of such counsel, is not liable in a suit for malicious prosecution for bringing such action. This is so because it disproves malice and shows probable cause." Id. 53–55. This court has held that the only difference in "express malice" and "implied malice" is in the mode of proving the same. *Wilson v. Noonan,* 35 Wis. 352. It follows, from these authorities, that a jury is not justified in finding a want of probable cause from the mere fact that a criminal prosecution has been instituted for the purpose of collecting a debt.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.